Mr. A.I. Shuler Chief University Police Department University of Florida Gainesville, Florida 32611
Dear Chief Shuler:
This is in response to your request for my opinion on substantially the following question:
 ARE UNIVERSITY POLICE OFFICERS "LAW ENFORCEMENT OFFICERS" FOR PURPOSES OF PART I, CH. 394, F.S., THE FLORIDA MENTAL HEALTH ACT?
Mental health services in Florida are provided within the statutory framework of Ch. 394, F.S., with Part I providing definitions, criteria and procedures for the voluntary and involuntary treatment of mentally ill persons and establishing a bill of rights for persons who are treated for mental illness. With respect to the responsibilities of law enforcement officers, s. 394.461(4)(e), F.S. (1984 Supp.), provides in pertinent part:
 When a law enforcement officer has arrested a person for a felony involving a crime of violence against another person, such person should be processed in the same manner as any other criminal suspect, notwithstanding the fact that the arresting officer has reasonable grounds for believing that the person's behavior meets statutory guidelines for involuntary examination pursuant to s. 394.463. When a law enforcement officer has arrested a person for a felony involving a crime of violence against another person and it appears that the person meets the statutory guidelines for involuntary examination or involuntary placement, the law enforcement agency shall immediately notify the designated receiving facility. . . .
The provisions of s. 394.463(2), F.S. (1984 Supp.), impose additional duties on "law enforcement officers" with respect to alternative manners by which an involuntary examination may be initiated. See, s. 394.463(2)(a)1. ("a law enforcement officer, or other designated agent of the court" pursuant to court order shall take certain persons into custody for delivery to the nearest receiving facility); s. 394.463(2)(a)2. ("[a] law enforcement officer shall take a person who appears to meet the criteria for involuntary examination into custody and deliver him or have him delivered to the nearest receiving facility for examination"); and s. 394.463(2)(a)3. ("a law enforcement officer shall take the person named in the certificate [executed by an authorized health professional stating that he has examined the person named within the preceding 48 hours and finds the person appears to meet the criteria for involuntary examination] into custody and deliver him to the nearest available receiving facility for involuntary examination"). Cf., s. 394.463(1), F.S. (1984 Supp.) (criteria for involuntary examination); AGO 85-81.
Florida statutory law provides numerous definitions of the phrase "law enforcement officer" for various statutory purposes. See, e.g., ss. 111.065 (legal costs and fees), 112.19 and 112.1904 (death benefits), 112.531 (rights while under investigation),316.1906 (speed measuring devices), 403.413 (littering), 496.21 (solicitation of contributions), 784.07 (assault), 790.001
(weapons and firearms), and 943.10, F.S. (standards and training). However, with respect to Part I, Ch. 394, F.S. (1984 Supp.), "[a]s used in [that] part, unless the context clearly requires otherwise, the term . . . `Law enforcement officer' means any city police officer, officer of the Florida Highway Patrol, sheriff, or deputy sheriff." Section 394.455(14), F.S. (1984 Supp.). A statutory definition of a word is controlling and will be followed by the courts. Ervin v. Capital Weekly Post, Inc., 97 So.2d 464
(Fla. 1957). See also, First Nat. Bank of Miami v. Florida Industrial Commission, 16 So.2d 636 (Fla. 1944), holding that legislative definitions of technical terms used in a statute are controlling. Where a statute contains a definition of a phrase, that meaning must be ascribed to the phrase whenever repeated in the same statute, unless a contrary intent clearly appears. Richard Bertram Co. v. Green, 132 So.2d 24 (3 D.C.A.Fla., 1961); Vocelle v. Knight Brothers Paper Company, 118 So.2d 664 (1 D.C.A.Fla., 1960). Thus, university police officers are not "law enforcement officers" as that phrase is used in Part I, Ch. 394, F.S., since such university police officers are not "city police officer[s], officer[s] of the Florida Highway Patrol, sheriff[s], or deputy sheriff[s]." See, Orr v. Trask, 464 So.2d 131
(Fla. 1985); Dobbs v. Sea Isle Hotel, 56 So.2d 341 (Fla. 1952); Ideal Farms Drainage Dist. v. Certain Lands, 19 So.2d 234
(Fla. 1944) (express statutory mention of certain things is implied exclusion of things not mentioned).
You have directed my attention to s. 240.268, F.S., providing in subsection (2) thereof that "university police are hereby declared to be law enforcement officers of the state," and further providing in subsection (5) thereof that, "[i]n performance of any of the powers, duties, and functions authorized by law or this section, university police shall have the same rights, protections, and immunities afforded other peace or law enforcement officers." (e.s.) It does not appear that s. 240.268 expressly authorizes university police officers to exercise those powers, duties and functions delegated by Ch. 394, F.S., to "law enforcement officer[s]" as specifically defined therein. Moreover, you have not directed my attention to any other provision of law that would authorize university police officers to exercise such powers, duties and functions, notwithstanding the implied exclusion of such university police officers from the technical definition of "law enforcement officer" for purposes of Part I, Ch. 394. Neither does it appear that Part I of Ch. 394 affords any "rights, protections, or immunities" to law enforcement officers as defined therein, but rather imposes on such officers certain duties and responsibilities with respect to the care, custody and delivery of certain persons who meet the criteria for involuntary examination pursuant to the Florida Mental Health Act. Thus, I am unable to conclude that the declaration in s. 240.268 that university police are law enforcement officers of the state and shall have the same rights, protections, and immunities afforded other law enforcement officers operates to alter or amend the more specific controlling definition of "law enforcement officer" provided in s. 394.455(14), F.S. (1984 Supp.), as that term is used in Part I, Ch. 394. Therefore, unless and until legislatively or judicially determined otherwise, it is my opinion that university police officers are not "law enforcement officers" for purposes of Part I, Ch. 394, F.S., the Florida Mental Health Act.
Sincerely,
Jim Smith Attorney General
Prepared by:
Kent L. Weissinger Assistant Attorney General