McCAUGHN, Collector of Internal Revenue, v.
AMERICAN METER CO.

No. 5013.

Circuit Court of Appeals, Third Circuit.

Aug. 7, 1933.

Edward W. Wells, U. S. Atty., and Thomas J. Curtin, Asst. U. S. Atty., both of Philadelphia, Pa. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and E. F. McMahon, Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for appellant.

Ralph B. Evans and Weill, Blakely & Nesbit, all of Philadelphia, Pa., for appellee.

Before BUFFINGTON, DAVIS, and THOMPSON, Circuit Judges.

BUFFINGTON, Circuit Judge.

The decisive question in this tax case is whether the taxpayer's gas meter was, under the Revenue Acts of 1918 and 1921 (40 Stat. 1122, § 900 (16), and 42 Stat. 292, § 900 (11), an "automatic, slot-vending machine."

The taxpayer made a patented device adapted to operate a release when a coin is dropped in its slot. The device when soldered, as was intended should be done, to a gas meter, a quarter dollar deposited in its slot, released and delivered to the depositor of the coin two hundred and fifty feet of gas. To answer the question whether such apparatus was an "automatic slot-vending machine," we take these four words and ascertain their common everyday meaning. Is the apparatus a machine? Assuredly so, for the dictionary defines a machine as "any combination of inanimate mechanism for utilizing or applying power." In the use of the present device we have two parties—a seller and a buyer; the commodity—gas; the quantity desired—two hundred fifty feet; the price—25 cents. Without the agency of either party, the device automatically receives the money from the buyer and holds it for the seller, automatically measures the product, automatically delivers it to the buyer. The sale is effected by a slot which receives the coin of the buyer; by gravity takes it out of the control of the buyer; and by gravity puts it in control of the seller; and at the same time releases the bargained amount of gas and delivers it to the buyer. The contract, sale, delivery, and payment are all effected by mechanism, automatically, and without any working human agency.

Such terms as "slot machine," as an agency for selling small articles, "nickel in the slot," were in common use and clearly defined in the public speech in this type of selling agencies. Presumably Congress used these words and terms in their common everyday meaning and consequently there is no uncertainty in the statute. Vending is a synonym for selling. It is a mere abstraction now to say that the transaction here involved was a license, a permit, a privilege of using gas, and not a sale of a commodity. Where, as here, the words of a statute are clear and unambiguous, there is no call for testimony or reasoning to attribute some imaginary meaning to them. The facts show that the device in question works automatically, that it is a machine, that it is a selling machine, a product delivery machine, and a price collecting machine; that it does away with human con-

trol, agency, work, and exercise of will power. What was meant and effected was a slot-made sale. We hold, therefore, that it is an "automatic slot-vending machine" and comes within the statutes in question.

Accordingly the judgment below is reversed, and the record remanded for procedure in accord with this opinion.