Continental Industries, Inc., et al., appellees, v. Norman A. Erbe, Attorney General, City of Des Moines et al., appellants.

No. 50121.

(Reported in 107 N.W.2d 57)

January 11, 1961.

Rehearing Denied March 7, 1961.

Norman A. Erbe, Attorney General, and Gary S. Gill, Special Assistant Attorney General, for appellants.

Gibson, Stewart & Garrett, of Des Moines, and Swisher, Cohrt, Swisher & Finch, of Waterloo, for appellees.

HAYS, J.—This appeal involves the interpretation to be given section 98.36(6), Code of 1958, and particularly to the words "vending machine", as they are used therein. The section reads as follows: "It shall be unlawful to sell or vend cigarettes by means of a device known as a vending machine."

Plaintiffs, makers, distributors and owners of certain types of machines by which cigarettes are dispensed to the public, brought this action in equity seeking to enjoin the defendants, various law-enforcement agencies, from interfering with the use of such machines in Iowa. A temporary injunction, later made permanent, was issued by the trial court and defendants appeal.

The record discloses two types of machines are involved and are known in this record as Exhibits 1 and 1A, and Exhibits 2 and 2A. Exhibit 1 is a cabinet, containing sections for numerous brands of cigarettes, which acts also as a display case and stands on the floor of the store or place of business where installed. It also contains electric motors, a coin slot for the deposit of the purchase price of a package of cigarettes; numerous buttons, the pushing of one of which will release a particular brand of cigarettes into a receptacle and from which the purchaser takes them. 1A, called a remote control, consists of a push button and a light which are connected by wires with electrical equipment in Exhibit 1.

This unit is installed behind the counter of the business establishment or at some place not generally accessible to others than the business proprietor or his employees. In order for the machine to function and make cigarettes available to a would-be purchaser, the following procedure is required: The purchaser deposits the price of a package of cigarettes in the coin slot on Exhibit 1. This lights the light on the remote-control unit, Exhibit 1A. The proprietor or his employee presses the button

on such control unit which lights a light on the cabinet, Exhibit 1, and activates the same. The purchaser by then pressing a button releases the desired brand into the receptacle from which he may take it.

The machine contains complicated mechanism which could not be readily changed or altered by one not trained in its construction, and is locked and inaccessible to the public. While it is urged that by taping down the push button on Exhibit 1A the machine would be constantly activated and would make the contents thereof available without any operation of Exhibit 1A, the record, and a demonstration before this court, dispels this contention. It clearly appears that each sale of a package of cigarettes is a separate transaction, requiring the following of the exact procedure above set forth. If the button on Exhibit 1A was taped down, a coin placed in the slot on Exhibit 1 would merely fall into a return slot for return to the purchaser and would not make an electrical contact.

Exhibits 2 and 2A are, in effect, identical in operation with Exhibits 1 and 1A except that the purchaser using this machine will pull a lever, rather than push a button, for the release of the desired brand of cigarettes. Otherwise, the exact procedure is required in the operation of Exhibits 2 and 2A as is required in the operation of Exhibits 1 and 1A.

As before stated, the decision herein must depend upon the meaning to be given to the words "vending machine" as used in the statute. Words and phrases must be construed according to the context and approved usage of the language, section 4.1(2), Code of 1958, but in ascertaining the meaning thereof we must look also to the context in order to give force and effect to the legislative intent, as embodied therein. Chapter 98, Code of 1958, deals with the sale of cigarettes and tobacco in this state. While cigarettes may be lawfully sold, they are deemed to be a commodity requiring specific regulations for the handling thereof. Under statutory regulations only licensed dealers or permit holders may dispense them and they are required to be bonded. Section 98.2, Code of 1958, as amended, provides: "No person shall furnish to any minor under eighteen years of age by gift, sale, or otherwise, any cigarette * * *."

As this section is the only one which specifically limits the sale of cigarettes, and section 98.36(6) limits only the manner in which they may be sold, we think it is clear that the legislature in enacting section 98.36(6) had in mind the prohibition against sale to minors and by the use of the words "vending machine" attributed to them their usual and ordinary meaning.

Machine selling or vending of merchandise is not in itself illegal. In the ordinary type of machine selling, the machine receives the money from the purchaser and holds it for the seller, automatically measures the product and automatically delivers it to the purchaser. The sale is effected by a slot which receives the coin of the buyer, by gravity takes it out of control of the buyer, and by gravity puts it in control of the seller, and at the same time releases the bargained amount of the product and delivers it to the buyer. McCaughn v. American Meter Co., 3 Cir., Pa., 67 F.2d 148. The entire transaction is effected by mechanism, automatically, and without any working human agency. 79 C. J. S., Sell, page 1035. It is clearly apparent that vending or selling cigarettes by use of such machines, if permitted, would nullify the provisions of section 98.2, as the automatic vendor must sell to any and all who insert coins. It has no power of discrimination.

Such, however, is not the type of machine involved herein. True, it ultimately sells or vends the cigarettes to the buyer, in that he deposits the coin in the machine and removes the cigarettes therefrom, but such removal is possible, not automatically, but only by the intervention of the proprietor in operating the remote-control unit.

Chapter 98, Code of 1958, while authorizing the sale of cigarettes, prohibits the sale thereof to minors, and places the responsibility against such sales upon the licensee or permit holder. It is his duty to refuse a sale to a minor by refusing to hand them across the counter to a minor. Under the types of machines in question, his opportunity to ascertain the age of any would-be purchaser, and his duty to reject such a sale, if the buyer be a minor, is in no way altered. Section 98.2, Code of 1958, is just as meaningful and enforceable when sale is made by the use of machines such as are here in question as if made

694

by a direct hand-to-hand sale by the permit holder. We think the legislature by using the term "vending machine" clearly referred to the wholly automatic type of machine and that the machines in question do not violate either the letter or the intent of section 98.36(6). The same effect, see Pressley v. City of Chicago, 26 Ill. App.2d 283, 168 N.E.2d 41.

It is contended that the cabinet, Exhibit 1, and the remote-control unit, Exhibit 1A, likewise Exhibits 2 and 2A, may be so removed from each other as to prevent the proprietor from determining the age of the would-be buyer and therefore are illegal. Such a situation is possible, just as it is possible for the permittee to make a hand-to-hand sale without regard to who is the purchaser. However, the possibility that section 98.36(6) may be ignored does not per se make the sale of cigarettes illegal, whether the sale be by machine or hand to hand. Furthermore, the trial court foresaw such a possibility and made suitable provision therefor in its decree.

The court standing four to four, the decision of the trial court stands Affirmed by Operation of Law.

For affirmance: HAYS, LARSON, PETERSON, and THORNTON, JJ.

For reversal: GARFIELD, C. J., and BLISS, OLIVER and THOMPSON, JJ.

SNELL, J., takes no part.

GARFIELD, C. J. (dissenting)—I do not share the majority view that it is clear the legislature in enacting Code section 98.36(6) had in mind only the prohibition in section 98.2 against sale of cigarettes to minors.

Nor do I agree "the legislature by using the term 'vending machine' clearly referred to the wholly automatic type of machine."

Section 98.36(6) provides: "It shall be unlawful to sell or vend cigarettes by means of a device known as a vending machine." I find nothing doubtful or obscure in meaning in this language. If the legislature clearly referred only to the

wholly automatic type of machine it is our duty to assume it would have added to the enactment such words as "of the wholly automatic type." It is not our function to add them to the statute, as the majority does.

We have repeatedly held we have no power to write into a statute words not there. Eysink v. Board of Supervisors, 229 Iowa 1240, 1244, 1245, 296 N.W. 376, 378, and citations; Iowa Public Serv. Co. v. Rhode, 230 Iowa 751, 754, 298 N.W. 794, 796; Dingman v. City of Council Bluffs, 249 Iowa 1121, 1126, 90 N.W.2d 742, 746; Cowman v. Hansen, 250 Iowa 358, 362, 363, 92 N.W.2d 682, 684.

Our Reports are replete with statements such as this from In re Guardianship of Wiley, 239 Iowa 1225, 1231, 1232, 34 N.W.2d 593, 596:

"As we have indicated, the intent of the legislature which is controlling here is to be gathered from the statute itself. It is our duty to give this act the interpretation its language calls for and not to speculate as to probable legislative intent apart from the wording used [citations].

"The much quoted admonition of the late Justice Oliver Wendell Holmes may be repeated here: 'We do not inquire what the legislature meant. We ask only what the statute means.'"

Young v. O'Keefe, 246 Iowa 1182, 1188, 69 N.W.2d 534, 538, expresses substantially the same thought in this way: "* * * when we say we are seeking the intent of the legislature we are in fact seeking its intent *only as expressed by its language.* We cannot ascribe to it an assumed or imagined intention or purpose not so expressed, nor can we substitute for its express intention one we deem more desirable or appropriate to changed conditions."

Shelby County Myrtue Memorial Hospital v. Harrison County, 249 Iowa 146, 151, 86 N.W.2d 104, 108, is more concise in stating the same proposition: "The question is not what the legislature should have said, or what it might have intended to say, but what it did say [citations]."

Later precedents to like effect include Lever Brothers Co. v. Erbe, 249 Iowa 454, 469, 87 N.W.2d 469, 479; Cook v. Born-

holdt, 250 Iowa 696, 698, 95 N.W.2d 749, 751; Ashby v. School Township of Liberty, 250 Iowa 1201, 1214, 98 N.W.2d 848, 857.

I think the two machines here involved fall within the statutory words "vending machine." The trial court apparently thought so too, since the injunction granted by it, which the majority affirms, is conditioned upon location of the control unit so only the proprietor or his employees have access to it. If such unit is located so the customer had access to it (as could easily be done), these machines would be vending machines even under the view of the trial court and the majority.

Plaintiffs argue that if section 98.36(6) prohibits sale of cigarettes by means of a vending machine with remote control requiring human intervention it is discriminatory and lacks due process, in violation of sections 6 and 9, Article I, Iowa Constitution, and the 14th Amendment to the Federal Constitution. I think the statute, if given the meaning its language calls for, is a valid exercise of the police power and does not violate any of these constitutional provisions.

Plaintiffs concede the legislature could, within constitutional limits, prohibit sale of cigarettes to minors through an automatic vending machine. I think the legislature has the power to prevent sale of cigarettes to anyone by means of a vending machine.

It is plaintiffs' "burden to negative every conceivable basis which may support this statute. All presumptions are in favor of the constitutionality of the statute and it will not be held invalid unless it is clear, plain and palpable that such a decision is required [citations]." State ex rel. Cairy v. Iowa Co-Op Assn., 250 Iowa 839, 843, 95 N.W.2d 441, 443. Decisions to like effect include Steinberg-Baum & Co. v. Countryman, 247 Iowa 923, 929, 77 N.W.2d 15, 18, and citations; Faber v. Loveless, 249 Iowa 593, 597, 88 N.W.2d 112, 114. See also State v. Di Paglia, 247 Iowa 79, 85, 71 N.W.2d 601, 604, 49 A. L. R.2d 1223.

The legislature conceivably may have reasoned from evidence it deemed convincing that the use of cigarettes, especially excessive use, is harmful to the health of adults as well as minors; that the sale of cigarettes by means of vending ma-

chines would stimulate their sale and use; and it would promote the public health to prohibit this means of selling cigarettes.

Certainly anything the legislature honestly feels would be apt to promote the public health is a legitimate exercise of the police power. If the legislature, as it might have done, reasoned as above suggested, the statute is not to be held unconstitutional merely because we may think it acted unwisely. But there is no showing such reasoning would even be unwise. On the contrary, its wisdom is attested by plaintiffs' argument that one retailer converted his loss from the sale of cigarettes into a profit of $1500 per year by use of a vending machine in question here, that they are attractive pieces of paraphernalia which add to the appearance of a place of business and "may even have some advertising value in calling attention to the availability of cigarettes on the premises."

I would reverse.

BLISS, OLIVER and THOMPSON, JJ., join in this dissent.